IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CHANIN FRANCES PICKENS,             )
                                    )
                    Plaintiff,      )
                                    )
    v.                              )    1:18CV27
                                    )
ANDREW SAUL,                        )
Commissioner of Social Security,[1] )
                                    )
                    Defendant.      )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Chanin Frances Pickens ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.     PROCEDURAL HISTORY

Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income Benefits on September 23, 2013, alleging a disability onset date

---

[1] Andrew Saul became Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul should be substituted for Nancy A. Berryhill as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

of January 15, 2013 in both applications. (Tr. at 30, 245-58.)[2] Her applications were denied initially (Tr. at 87-120, 151-59) and upon reconsideration (Tr. at 121-50, 170-87). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 188-90.) On November 1, 2016, Plaintiff, along with her attorney and an impartial vocational expert, attended the subsequent hearing. (Tr. at 30.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 45), and, on November 16, 2017, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993)

---

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #8].

2

(quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income

3

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on

---

Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since January 15, 2013, her alleged onset date. The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 32.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> post-traumatic stress disorder, anxiety disorder, hearing loss, and knee pain.

(Tr. at 33.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 35-38.) Therefore, the ALJ assessed

---

"ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

5

Plaintiff's RFC and determined that she could perform light work with myriad further limitations. Specifically, the ALJ found that Plaintiff

> can occasionally engage in balancing, stooping, kneeling, crouching, crawling, and climbing or stairs and ramps, but cannot climb ropes, ladders, or scaffolds. She can understand, remember, and carry out simple routine tasks, requires a work environment in which there is low background noise to the extent communications is [sic] required with others, can interact appropriately with others on a basic level, and have no more than 5 people in her immediate vicinity. She must work at a nonproduction pace, have few changes in her work routine, and have few requirements for judgment-related work decisions. [Plaintiff] should avoid exposure to workplace hazards such as moving machinery and unprotected heights.

(Tr. at 38.) Based on this determination, the ALJ found under step four of the analysis that Plaintiff could perform her past relevant work as a hotel cleaner. (Tr. at 43.) The ALJ also made an alternative finding at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, she could perform other jobs available in the national economy. (Tr. at 44-45.) Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 45.)

Plaintiff now raises three challenges to the ALJ's decision. (Pl.'s Br. [Doc. #14] at 5.) Substantively, she contends that the ALJ failed "to provide a logical bridge between the evidence and her conclusions regarding [Plaintiff's] RFC." Plaintiff also raises two procedural challenges, arguing that (1) Defendant improperly asserted the affirmative defense of *res judicata*, and that (2) "the ALJ's appointment did not comply with the Appointments Clause." (Id.) After careful review of the evidence, the Court finds that Plaintiff's first challenge requires remand. Therefore, the Court declines consideration of Plaintiff's additional contentions at this time.

6

A. RFC

Plaintiff first contends that the ALJ failed to conduct a proper function-by-function analysis of Plaintiff's impairments. In particular, she argues that the ALJ's decision lacks a "logical bridge" linking the evidence with the ultimate RFC findings regarding Plaintiff's PTSD, anxiety, and hearing loss. As SSR 96-8p instructs, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis," including the functions listed in the regulations. SSR 96-8p, 1996 WL 374184, at *1. "Only after such a function-by-function analysis may an ALJ express RFC in terms of the exertional levels of work." Monroe v. Colvin, No. 12-1098, 2016 WL 3349355, at *9 (4th Cir. June 16, 2016) (internal quotations and citations omitted). Further, the "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7. An ALJ must "both identify evidence that supports his conclusion and build an accurate and logical bridge from [that] evidence to his conclusion." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (emphasis omitted).

In the present case, the Court finds that the ALJ erred in evaluating the effects of Plaintiff's hearing loss. As the ALJ notes in her decision, the results of Plaintiff's hearing test in 2014 showed "severe to profound bilateral mixed hearing loss," with severe hearing loss in her left ear and profound hearing loss in her right. (Tr. at 34, 442, 445.) Her treating providers noted that "ossiculoplasty would not improve her hearing much considering her degree of sensorineural loss." (Tr. at 446.) Plaintiff also reported intermittent balance problems,

including frequent stumbling and dizziness, bilateral tinnitus, and frequent ear infections. (Tr. at 34.) The ALJ included hearing loss among Plaintiff's severe impairments at step two and categorized the related impairments of tinnitus and ear infections as non-severe. (Tr. at 33-34.) At step three of the sequential analysis, the ALJ determined that Plaintiff's hearing loss did not meet or equal the relevant listed impairment, namely Listing 2.10 (Tr. at 36), and when later assessing Plaintiff's RFC, the ALJ included the following hearing-related limitation: "[Plaintiff] requires a work environment in which there is low background noise to the extent communications is required with others" (Tr. at 38).

Notably, in making her RFC assessment, the ALJ found that "the medical evidence is generally supportive of [Plaintiff's] testimony" with regard to her bilateral hearing loss. (Tr. at 41.) The ALJ acknowledged that Plaintiff had been diagnosed with profound mixed hearing loss, and even with her hearing aid, Plaintiff was found to have only 25% hearing in her left ear – the better of the two. (Tr. at 41.) The ALJ noted that Plaintiff's psychiatrist, Dr. Molly Froelich, noted that Plaintiff "appeared to understand speech and interact with me in an appropriate way" (Tr. at 41, 578), but Dr. Froelich also found that Plaintiff had anxiety related to her hearing difficulties (Tr. at 40, 578) "because she cannot really hear what is going on around her. She cannot tell if someone might be coming to her home or someone is behind her or other things, and she feels very scared when she is alone at night" (Tr. at 578). At the hearing, Plaintiff also testified that she has difficulty discriminating between sounds in a noisy environment and that her hearing aid does not help with this. (Tr. at 65-66.) She further stated that, in prior jobs, she had difficulty focusing on tasks when someone was speaking to her, because she needed to look directly at the speaker in order to understand. (Tr. at 66-67.)

Plaintiff reported that her most recent employers addressed this problem by taking her to a quiet environment to give her instructions so that she would understand them. (Tr. at 74.)[5]

The ALJ attempted to address Plaintiff's hearing impairment by limiting her to "a work environment in which there is low background noise to the extent communications is required with others." (Tr. at 38.) Plaintiff, however, argues that she "would need to have a direct line of [sight] to anyone speaking to her in the workplace, might need repeated statements[,] and would require a quiet work environment." (Pl.'s Br. at 17.) Plaintiff specifically testified that "I have to look straight at somebody to be able to talk to them" in order to read their lips, and explained that she needed to be able to stop other work and focus on listening if someone was trying to speak to her. (Tr. at 65, 66.) The ALJ noted this testimony and found that the medical evidence regarding her bilateral hearing loss was "generally supportive of [Plaintiff's] testimony." (Tr. at 39, 41.)[6] Given Plaintiff's testimony and this finding, the Court agrees that it appears that further, hearing-related limitations, or a further explanation for omitting them, is warranted by the record in this case.

---

[5] The hearing transcript similarly reflects Plaintiff's hearing difficulties, including multiple instances in which the ALJ or Plaintiff's attorney needed to repeat questions for Plaintiff to understand, even in the context of the quiet hearing room. (Tr. at 60, 61, 62, 77.)

[6] To the extent the Commissioner relies on other evidence to attempt to contradict or discount Plaintiff's testimony, the Court will not consider *post hoc* rationalizations not relied upon by the ALJ. See Sec. & Exch. Comm'n v. Chenery Corp., 318 U.S. 80, 87 (1943) (courts must review administrative decisions on the grounds upon which the record discloses the action was based); Anderson v. Colvin, No. 1:10CV671, 2014 WL 1224726 at *1 (M.D.N.C. March 25, 2014) (noting that this Court's "[r]eview of the ALJ's ruling is. limited further by the so-called 'Chenery Doctrine,' which prohibits courts from considering post hoc rationalizations in defense of administrative agency decisions.... Under the doctrine, a reviewing court 'must judge the propriety of [agency] action solely by the grounds invoked by the agency.... If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis' ").

9

Moreover, the Court further finds that all of the jobs identified at steps four and five of the sequential analysis appear to include conflicting limitations which were not addressed by the vocational expert or the ALJ. As correctly noted by Plaintiff, both of Plaintiff's past relevant jobs as generally performed, as well as all three jobs identified at step five, involve at least a "Level 3 - Moderate" noise level, which appears to be greater than the "low background noise" set out in the RFC, and is also greater than the "quiet work environment" and additional limitations reflected by the hearing testimony.[7] The ALJ never asked the vocational expert whether his testimony conflicted with the Dictionary for Occupational Titles ("DOT"), which included the relevant noise level information, and neither the ALJ nor the vocational expert independently identified any apparent conflicts.

As the Fourth Circuit explained in Pearson v. Colvin, 810 F.3d 204, 211 (4th Cir. 2015), wherever there is an apparent conflict between a vocational expert's testimony and the DOT, the ALJ is required to elicit a reasonable "explanation from the expert as to whether these occupations do, in fact, require [the limitation in question]" before relying on the expert's testimony. Id. The Fourth Circuit also clarified that if an expert's testimony apparently

---

[7] The Social Security Program Operations Manual System (DI 25001.001) notes that the noise level ratings are based on the following coding system:
| | | |
|---|---|---|
| 1 | Very Quiet | Isolation booth for hearing test |
| 2 | Quiet | Library, many private offices |
| 3 | Moderate | Department or grocery store |
| 4 | Loud | Large earth movers, heavy traffic |
| 5 | Very loud | Rock concert, jack hammer |

With respect to these contentions, Defendant notes that the ALJ "did not limit Plaintiff to jobs with no ambient noise" (Def.'s Br. [Doc. #16] at 8), and it is certainly true that there was no limitation to a "very quiet" noise level. However, the RFC limitation to "low background noise" appears analogous to a "quiet" rather than "moderate" noise level on this scale, and as noted above, a limitation to a "quiet" noise level is consistent with the hearing testimony, which the ALJ accepted as supported by the medical evidence. To the extent there is ambiguity or inconsistency in these determinations, that is for the ALJ to clarify and resolve, not this Court.

conflicts with the DOT, the expert's testimony can only provide substantial evidence to support the ALJ's decision if the ALJ received an explanation from the expert explaining the conflict and determined both (1) that the explanation was reasonable and (2) that it provided a basis for relying on the expert's testimony rather than the DOT. Id. at 209-11; see also Rholetter v. Colvin, 639 F. App'x 935, 938 (4th Cir. 2016). Here, because no explanation was provided to account for the apparent conflict in noise levels, substantial evidence fails to support the ALJ's findings at steps four and five of the sequential analysis.[8] According, remand is required.[9]

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #15] should be DENIED, and

---

[8] The Commissioner contends that the ALJ asked the VE whether the VE's testimony conflicted with the DOT (Def.'s Br. at 9 (citing Tr. at 83-85).) However, the transcript does not reflect any such questioning. Moreover, the Fourth Circuit in Pearson held that the VE's general denial of conflicts would not be sufficient in any event, as "an ALJ has not fulfilled his affirmative duty merely because the [vocational expert] responds 'yes' when asked if her testimony is consistent with the [Dictionary]. . . . The ALJ independently must identify conflicts between the expert's testimony and the Dictionary." Pearson, 810 F.3d at 208-09 (internal quotations omitted). The Commissioner also contends that if there were an issue, Plaintiff (rather than the ALJ) should have questioned the VE regarding the conflict, citing cases from 2014 and 2015. (Def.'s Br. at 9-10.) However, in December 2015, the Fourth Circuit in Pearson overruled this line of cases and specifically held that:
> SSR 00–4p, however, requires nothing of the claimant. See Prochaska v. Barnhart, 454 F.3d 731, 735 (7th Cir.2006) ("[The claimant] was not required to raise th[e conflict] at the hearing, because the Ruling places the burden of making the necessary inquiry on the ALJ."). Moreover, given that the Commissioner bears the burden of proof at this final step, adopting the Commissioner's view "would amount to shifting the burden" of proof "back to the claimant." Haddock, 196 F.3d at 1090. This we will not do.

Pearson, 810 F.3d at 210.

[9] To the extent that there also may be questions with respect to whether Plaintiff's hearing loss actually meets the Listing 2.10A, this issue can also be further considered on remand.

Plaintiff's Motion for Summary Judgment [Doc. #13] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 30th day of August, 2019.

/s/ Joi Elizabeth Peake
United States Magistrate Judge